Good morning counsel, Ms. Montgomery. May it please the court, I am Jamie Montgomery, Assistant Appellate Defender from the Office of the State Appellate Defender, appearing today on behalf of Mr. Eugene Obiazi. Mr. Obiazi appeals from a circuit court's judgment granting the state's motion to dismiss his post-conviction petition at the second stage. We contend that the circuit court here erred in two ways. First in finding that Mr. Obiazi was culpably negligent in the untimely filing of his petition, and second in finding that he failed to make a substantial showing of ineffective assistance of counsel. Turning first to the culpable negligence question, I have a question just on that point. In People v. Johnson, the Supreme Court found the defendant's actions in late filing akin to recklessness. As there, the defendant, I believe, knew there was a deadline, but relied on others, not attorneys, and took no steps until after the due date to get the document filed. Why should we not construe the defendant's actions here similarly? For a few reasons. First, prior to Johnson, the law in the state was fairly unsettled regarding when a petition would be due when no PLA was filed. At that time, some attorneys would argue that a post-conviction petition where no PLA is filed would have been timely because the petition would have been due in October. But other attorneys, including those in Johnson, argued that there simply was no timeline for filing a petition when a PLA had not been filed. In fact, in Johnson, the state conceded and the Supreme Court agreed that a literal reading of the statute does not provide a deadline for filing a post-conviction petition when no PLA is filed. Finding that that would be an absurd result, the Supreme Court then determined that it must be, looking at legislative history, that it had to read into the statute language that the legislature had omitted, I believe the court said, by oversight, and then determined that the due date for a petition when no PLA is filed would be six months from the date for filing a cert or for filing a PLA. So here, Johnson's case was decided just six months before I filed my opening brief in this case. So had I gotten to this brief a little sooner, I might have been arguing here that the petition was timely, in addition to arguing that if it wasn't, he wasn't culpably negligent. But the point is, well, as Johnson recognized and has been the standard in this state for years, while all citizens are charged with knowledge of the law, and of course, ignorance of the law is not an excuse of untimely filing, the nature of the law on this issue was, even among licensed attorneys and courts of the state, was very unsettled. And Mr. Obiazi had no, did not have the guidance of Johnson to tell him this. So... Well, yeah, go ahead. Demonstrate. So, I mean, those are things that this court can and should consider in determining whether he was culpably negligent. If our Supreme Court recognized that the statute did not provide a timeline for him to file, how could he have known? So we give him a pass on that, but is that really what was missing, or was it factual information that he didn't have with respect to this court's ruling on the PFR? That is the main problem here. The, you know, this, Mr. Obiazi did not, he did everything that he could to attempt to find, to determine whether, what had gone on with his case. You know, there's, in the briefs we debate about the letter that was sent by former appellate counsel and whether that constitutes advice or not, but even taking that out of the equation, the real issue here was that he was never told by anyone that his pro se petition for rehearing had been denied. And he claimed in his pro se petition that at the time he filed his pro se petition, for pro se post-conviction petition, he alleged on the very first page that at that time he did not know whether his petition for rehearing had been granted or denied. That claim was later developed more by PC counsel, who then also attached the prison legal mail card to show that while he had mailed a document on December 19th of 2012 to this court, to the state appellate defender, and to the appellate prosecutor's office, which presumably was his pro se petition for rehearing. And this court can take judicial notice of its own records as to when his pro se filing was filed. I believe the clerk's records show that it was December 21st, which jives with the December 19th date. But going back for a minute with respect to this issue of knowledge and recklessness, is a defendant reckless for relying entirely on mailed notices from a court like this defendant was expecting to determine a timeline for filing? I don't think that he can be determined, he can be claimed, he can, I'm sorry. Here he wasn't even negligent, much less reckless. He did what he could. He wrote to this court requesting, after he filed his rehearing, he wrote to the court about a month later asking for an update. And although at that time his petition for rehearing had already been denied, no one answered his letter, as evidenced by the prison legal mail card. Was he notified as to the status of his motion? Never. There is no record of any mail going to him at the prison from this court or from his lawyer no longer representing him. He received nothing after he filed his petition and then also after he filed, or after he mailed his letter requesting an update. So without knowing that his petition for rehearing had been denied, he had no way of knowing, he did not know that the timeline, whatever it might be, considering that the law didn't provide one at that time, he had no way of knowing that that time had even begun. So he wasn't reckless, you know, the law requires something above ordinary negligence, and here he wasn't even ordinarily negligent. Assuming that timeliness is not an issue, let's talk about his ineffective assistance of counsel claim. At one point, the court indicated that he needed an evidentiary hearing, he said, I don't know if he said exactly those words, but he did say, I need to hear from the lawyer. And then shortly thereafter, just dismissed. Correct. That's exactly what happened. At the hearing on the state's motion to dismiss, the judge implicitly found that he had not been publicly negligent, given that he was, the judge did say this particular claim needs to move on to a hearing. And then there was some confusion about why or about whether the Aguilar claim should move on. And the judge wanted to take some time to review case law on that. And then the parties expressed confusion about whether or not, well, does the success of the ineffective assistance of counsel regarding Coburn and Cook, does that mean that all the claims go forward as it would in a first stage? And so then they continued the case for status for the court to rule on the Aguilar and to figure out which claims were going to go forward to the third stage hearing. Inexplicably, a month later, they come into court and the court says it's untimely, it's entirely the defendant's fault and rejected all of the claims after it had said explicitly. And the quote was, I will not, you know, the court acknowledged the state's argument that that this could have just, you know, this could be strategy, that maybe the witnesses were impeachable or were bad witnesses or he didn't want to suborn perjury. But the court said there, until counsel is sitting over there in that chair being questioned, I don't know. And the judge was right. I mean, the record does not provide a reason why the why counsel would not have called these people, you know, assuming the truth of the claims in the petition and the affidavits as we've lost at this stage. There is no reason why defense counsel should not have called two witnesses who would have corroborated, you know, an otherwise completely uncorroborated defense. Isn't there also an allegation that the trial counsel never investigated or spoke to one of the two witnesses? Yes. Presumably the least connected to the events. Yeah. The affidavit from Miss Coburn, who was the girlfriend, she swore in her affidavit that she saw the entire incident and would provide testimony that supported the defense of this whole thing was made up. And that and in addition to that, she would have explained the otherwise unexplained appearance of a gun if Mr. Obiazi didn't, if he didn't possess the gun, why would there be a gun in the backyard? And her testimony that there was often drug paraphernalia and weapons found in my backyard then because people would walk through and throw things over, that would have provided the answer to that. Now, Coburn also averred that she said she talked to counsel twice. That's what I was going to ask you about. So isn't that sufficient for then counsel to make this strategic choice? I mean, he interviewed her and met with her twice. Isn't it then his decision strategically and trying this case on behalf of the defendant to decide what would the strongest case be? And he felt that these witnesses or certainly Coburn had a connection to the defendant and that he had a better defense by requiring the state to, quote, prove its case. Well, the law does generally assume that attorneys don't call witnesses for strategic reasons, but the law also says that that general assumption does not apply in second stage post-conviction or in post-conviction proceedings where the record does not show that the attorney's failure to call the witness was based on strategy. And given that there is nothing in the record here to show that counsel even talked to these people or that counsel made a choice not to call her, and given, like I said earlier, that we have to assume the truth of these things, the fact that she would have answered the, you know, the where did the gun come from issue and also would have provided, you know, corroboration for this defense, case law says that that is, you know, effectively ineffective assistance of counsel. And without being able to point to something here that affirmatively shows that this was counsel's strategy, it has to move on to the third stage. It could be that at a third stage evidentiary hearing, counsel will get up and say that that's exactly what happened. But counsel might also say, well, gosh, I don't know. I don't know why I didn't call her. And, you know, the fact that, you know, Coburn's affidavit says that she told counsel about Jimmy Cook, who was her cousin and who was present inside the house when this went on. Mr. Cook's affidavit says that he saw the defendant being tased apparently for no reason with his arm, while his hands were in the air and would corroborate that portion of the defense and that he was never contacted by defense counsel. Now, the defense being that the police fabricated this whole incident to cover the excessive use of force in tasing him. Yes. And, you know, the point is Cook would have corroborated the excessive force hands up. True or not true. That's what allegedly Cook was going to say. Yes, that's true. Yes, that's the allegation. Yeah. He didn't see the whole incident, but he did see the actual act of tasing. And, yeah, so they both would have corroborated the defense that this was all fabricated. Would it, you know, Coburn would have provided an explanation for the otherwise unanswered part of the defense. But at the third stage, counsel could have said, hey, nobody told me about Cook or I talked to him and I didn't believe him or. Correct. If he didn't have the opportunity to do that. Right. And the, you know, and the record doesn't have anything in it to show, you know, there's. Well, we have to assume that whatever the outdated say are true. Yeah. Unless they're positively rebutted by the record. And there's nothing here in the record that shows that counsel made a strategic decision here. And if there's no further questions, I would see you ever have.  Mr. Zimmerman. May it please the court, counsel. Good morning, your honor. My name is John Zimmerman. I'm from the 4th District Appellate Prosecutor's Office here on behalf of the state. I will follow the same argument time frame or timeline as your honors just discussed with prior counsel. In regards to the untimeliness, it is undisputed that this post-conviction petition was untimely. But was it reckless? Yes, he was reckless, culpably negligent, your honor. The state wants to remind this court that the burden rests with the defendant in proving his lack of culpable negligence and everything within the record tends to not support his case. For example, as I stated, it's undisputed that the petition was untimely by over a month. How does he try to overcome this culpable negligence? He argues he thought that it needed to be filed three years from his conviction. Well, that is just the incorrect law because that only applies if there's no direct appeal filed. The defendant was clearly aware that it was a direct appeal filed. So the fact that he relied on that law to prove his culpable negligence is incorrect. And as your honor noted in Johnson, the defendant's lack of legal knowledge as to post-conviction matters is insufficient since ignorance of the law or one's legal rights does not provide an excuse for his late filing. But he knew he had a deadline to meet. He was trying to ascertain, I guess, via the legal documents, the one he had, he was waiting for notice about, when to actually take the next step. Isn't that correct? That is correct, your honor. And that goes on to my next point. How else does he try to show that he's not culpable of negligence? He blames it on his counsel. And this is not like Grizzly, where the counsel, his prior counsel, directly told him the incorrect date. Unlike Grizzly, counsel just stated in a letter, I'm no longer representing you. Here are potential avenues for you going forward. If you look at the record, I believe it's the common law record 1,107, that is the potential avenues. It has the timeframes, I think, just for the motion for a hearing and for the petition for leave to appeal. And it doesn't say the deadline. It just states 35 days from X, 35 days from Y. So we have incomplete legal advice here, not incorrect. Correct. So why should Grizzly govern the situation? Grizzly should not govern in this situation. Just in regards to proving his culpable negligence, he cannot rely on counsel's advice because there was no advice. This was the defendant's own responsibility to determine when these are due. And we go forward towards the correspondences as he filed a motion for he never heard that was denied. But if he's a party to an action, doesn't he have the right to rely on getting notice of the disposition? The state would agree with that sentiment, Your Honor. However, he didn't get notice. Where was the notice sent in this case? I'm not sure where the notice was sent. It was sent to the, well, the record reflects it was sent to his prior attorney. I mean, if you argue on one hand, he's pro se and he's responsible and forget the legal advice, then counsel getting the notice is a nullity. Pardon me? Counsel getting notice of the denial of the PFR, I could have gotten it. Doesn't help the defendant. I don't represent him. Counsel didn't represent him. He was representing himself. And as a party, isn't he entitled to notice? I would agree with that, Your Honor. However. How is this untitled? Because he did not, I mean, how is it not called a negligent? Because he, just because he never received that notice, he could have still, he didn't send any correspondences for over nine months since he sent that notice to the court in, I believe, January of 2013, asking about inquiring what, what occurred. And the state's position is that simply because. Would you take the position that every defendant should be calling the appellate prosecutor's office every month saying, where's my appeal? Where's my appeal? I just want to make sure I, where's my decision? You think it's really unreasonable to wait nine months and an appellate? In regards to when you're aware that you need to file certain things within two to three months, then I'm. In your pro se. Pardon me? In your pro se. Yes. If I was in, well, he's obviously in jail. He doesn't have much else to do besides worry about the status of his case. So when he's having to file these motions within two months, I think it would be about the most important and responsible to try and continue to make contact with whoever is necessary to make contact with. He did write to the clerk's office. He wrote once, your honor, in nine months. And he didn't get an answer. And if someone doesn't return my call, I continue to make calls until they're returning. I understand your honors. I mean, you have a phone. He doesn't have a phone. He's got to rely on DOC mail. Is it our fault that we sent the notice to the wrong party, so to speak? I'm not sure if I'm in the position to answer that, your honor. Let's assume for a moment that timeliness is not an issue. Let's talk about the ineffective assistance claim. As you talked to your opponent about this court, at one point said, I'm going to need to hear from the lawyer, and then shortly thereafter just dismisses the post-conviction petition without going into the third stage to hear from the lawyer. Why was the court correct in not proceeding to the third stage? Well, I believe when he first stated he needed an evidentiary hearing, he was also wanting to dismiss certain portions of the post-conviction petition while moving forward on others. And I think he determined he couldn't do that. I'm not really sure exactly what occurred there. But I think he did what any reasonable trial covert judge would do. If he's unsure of what the law is, he takes another advisement and he goes back and researches the law. And when he came back and thereafter dismissed the defendant's post-conviction petition, he stated on the record that he reviewed the entire transcript of proceedings. He reviewed the entire trial. He stated that, as he was the presiding judge over the trial, that counsel did an excellent job and that he was not objectively unreasonable. So I think he, although he stated he needed an evidentiary hearing, after going back and seeing the entire trial, there was no objectively unreasonable counsel. How did those affidavits that were submitted, how could those have been rebutted by the trial evidence? Well, two parts. The first is that the state's position is that the affidavits actually helped the state's case because they showed that counsel did in fact investigate these witnesses and that he did talk to Ms. Coburn at least. And based upon that, there's a presumption, as your Honor noted, that it was valid trial strategy and that these witnesses would not help the case. Although Mr. Cook, I believe, stated that counsel never contacted him, this would merely be cumulative based upon what Ms. Coburn stated. Really? Because didn't Cook say that he saw him in the driveway with his hands up and them tasing him? So is that consistent with what Coburn said? Isn't it a little different? I don't remember the exact statements, but I believe Ms. Coburn also stated similarly. They had the same story, was that the police officers walked up to him and tased him. And that goes into the second point, which I think the trial strategy of the defense counsel kind of shows that it was not objectively unreasonable to not call these witnesses. Counsel and I somewhat went back and forth about what the trial strategy was, but the state's position is that by not calling any witnesses, the trial counsel had much more leeway in attacking the state's case. He could poke holes throughout it. He could say, well, this officer stated this, this officer stated this, there's inconsistencies. If he calls these two witnesses that basically tell the jury, the police officers walked up, said, put your hands up and tased him, that's a little incredulous to the state's benefit. And I'm aware- But that was the defense, though. They would have corroborated the defense, no matter how outrageous the defense was, is that you're implying. Yes, but I think when you call those two witnesses, the jury would then have to assess their credibility. And if the jury disagreed with them, then they would essentially, by finding they lack credibility, could also say that the defendant's guilty because they just don't believe their case. But at the same token, if the jury did believe them and believes that the police officers were willing to lie on one issue, maybe they were lying on other issues. That's- The jury's not 12 young assistant state's attorneys, which is why defense attorneys don't usually let them sit there. So I appreciate your position, but this is 12 individuals, presumably no bias, no interest. And they hear from people. There's no indication here as to whether they were impeachable, whether they had priors. I mean, it's just nothing in this record. That's true. But as Your Honor was stating, there's that presumption that trial counsel did investigate them, which was- No, there's a presumption he didn't investigate Cook. Yes, but there's- So- At this stage in the proceeding, it's a presumption that he investigated. Yes. So there's also the presumption that defense counsel was aware of both of these witnesses. And I believe the presumption that he's aware of these witnesses and the fact that there's an affidavit stating he investigated one of them is sufficient for this court to determine that that trial strategy was not to call any witnesses. And I believe Your Honor actually stated that Cook was actually saw less of what occurred than Ms. Coburn. So he would be less probative of even what Ms. Coburn would state. Right, but it has to be a reasonable strategy. And really, isn't the defense burden here not to establish that the Strickland standard has been met, but really to substantially plead a Strickland violation? So this isn't the stage where they have to prove it. It's really the allegations have to substantially plead it. That is true, unless they're affirmatively refuted by the record, which the state contends they are, because the state would posit that defendants' witnesses and the affidavits are now part of the record. And as those affidavits show that trial counsel investigated them, then it can be presumed that it was just trial strategy not to call them. And as I stated, there exists a danger that the failure to prove a defense would be taken by the jury as a sign of defense guilt. It was objectively reasonable conduct to not present a defense in this case. Because like I said, what would the witnesses say? That the police just walked up and tased them. And I know this is not when the court determines the credibility of witnesses, but this is whether trial counsel would determine the credibility of those witnesses. And since there's that presumption that is active, you can presume that he did look at these witnesses. And even, I know this goes somewhat beyond the scope of this analysis regarding what Your Honor just stated about the scope of what we're trying to determine. But if you look at the entire record as the trial court did, trial counsel did do an excellent job with this case. He cross-examined the state's eyewitness who saw the gun for over 40 pages of the transcript. He, there were multiple other witnesses that he cross-examined intensely. And I think just based on the record that there was no objectively unreasonable conduct on trial counsel, and simply because defendant now has failed to call these two witnesses, I did not see how that supports a Strickland violation and effective assistance under this second stage post-conviction petition. So if there are no further questions, the state will request this court to affirm the trial court's dismissal. Thank you, Your Honor. Thank you very much. Thank you. Ms. Montgomery? Ms. Montgomery, Mr. Zimmerman makes a good point that you have to show that there was a substantial showing that trial counsel was infected. Taking in consideration the possibility for trial strategy, how do you submit to us that you had met that burden here? Given, I mean, Mr. Zimmerman argues that the trial counsel did a good job of crossing the witness, which was Officer Tran, and he did. It's so good, in fact, that the jury sent two questions seeking clarification of Tran's testimony and twice indicated that it was deadlocked. The evidence here was not closely balanced. The jury clearly had some problems with the state's evidence. And given that, there's no reason for trial counsel not to put on the only evidence that would have corroborated the defense, and had counsel put on the testimony of Coburn and Cook, that very likely would have pushed the balance and resulted in an acquittal. How do we know, though, that trial counsel, well, I probably shouldn't ask this question, because it's substantially, it's probably going to stage three. I mean, how do we know the trial counsel didn't look at these two people and they were, looked like heroin addicts or they had horrible prior criminal histories or something to that effect? And he's like, I'm not putting these people on. Well, as Your Honor recognized, that's why this case needs to go to a third stage hearing. There's nothing in the record to show why it would have been strategic for counsel not to call these witnesses or to not even investigate Cook. And, you know, there was a point made that counsel would have, must have determined that Cook was, would have only presented cumulative evidence. Well, if counsel didn't talk to him, how did he know? How, how would he, how could he make the decision that Cook's testimony would only have been cumulative? Maybe Coburn told him what Cook was going to say. Well, she is his cousin. She is. But again, her story of what he was going to say, you know, reasonable, effective defense counsel is charged with investigating the defense. And by not even attempting to contact Cook, that was a definite failure on counsel's behalf, assuming the truth of everything in the petition and the affidavits as we must. Um, you know, the question about, um, you know, counsel argued that this was an outrageous defense. Well, I mean, the state's story was not entirely believable either. I mean, as counsel argued before the, as defense counsel argued at trial, the state's story had some holes and was unbelievable as well. Um, so. That was the whole ball of wax in the defense, correct? Correct. I mean, just attacking the state's case that they didn't prove their case beyond reasonable doubt that the cops were liars, blah, blah, blah. How are these two going to change or add to that defense? Because they would have testified to facts that supported the argument that the cops were lying, um, and would have, you know, one of the main points, um, the state argued at trial to refute the defense was that it just, you know, makes no sense that officers would just walk up and tase someone. Well, I mean, but if you've got two witnesses who say that's exactly what happened or could provide a little bit more, um, you know, background information about that, um, situation, that would have definitely helped the defense here. And, you know, unknown at the time, but known now, you know, recent events and things that are in the news make it probably less outrageous to consider that something like this might have happened given things that are reported in the news about, uh, police misconduct in places like Milwaukee and Chicago and things like that. Um, and, uh, now there was a question about, um, the court changing its mind and counsel asserted that there was the court, you know, reviewed the whole record and changed its mind. Well, the court was entitled to do that. We're not arguing that it was wrong for the court to change its mind. We're arguing that the court was wrong when it changed its mind and, um, the court, you know, the court's comments at the hearing where it, um, dismissed everything, you know, the court provided no explanation for its change of heart. It didn't even acknowledge that it had previously determined that there was no issue that had to go on to a third stage hearing. May I finish my thought? Um, but additionally at that hearing, when the judge said, I reviewed, you know, I sat on the trial and defense counsel did, um, I felt counsel did a good job, the court also referred to defense counsel as a female, which PC counsel was female, but trial counsel was male. So I don't think that the court's comments show that the court was actually really like clear on what had happened previously. Um, and, uh, just very, very briefly on culpable negligence. This is a poster child case for the culpable negligence standard. And while there was plenty of blame to go around here between, uh, you know, appellate defender's office, this court's clerk, none of the blame lies with Mr. Togliatti, for all these reasons, we'd ask the court to reverse the judgment. Thank you. Thank you counsel for your arguments this morning, the court will take the matter under advisement and render a decision in due course.